### Charles Spence *v.* The State.

1. **Indictment.**—After a plea of not guilty it is too late to object that the
indictment fails to show at what term of the court it was presented.

2. **Evidence.**—Defendant's witnesses having testified that they knew the gen-
eral character for truth of the principal state's witness in the community
where she lived, it was error to allow witnesses for the state, over objection
of the defendant, to testify that, although they did not know the general
character for truth of the impeached witness, yet, from their general
knowledge of her, they would believe her on oath.

3. **Transfer of Causes from the District to the County Court.**—A.
theft of cattle, worth less than $20, committed in 1872, was only a mis-
demeanor as the law then stood; wherefore the present case was properly
transferred, in 1876, to the county court by the district court. But the
act of May 17, 1873, made the theft of cattle a felony, regardless of the
value.

4. **Construction of Statutes.**—The act of August 21, 1876, amendatory of
Article 757 of the Penal Code, does not repeal Article 758.

Appeal from the County Court of Austin. Tried below
before the Hon. John P. Bell.

All material facts are stated in the opinion.

*Chesley & Haggerty* and *W. J. Glenn,* for the appellant..

*George McCormick,* Assistant Attorney General, for the
.State.

ECTOR, Presiding Judge.  The appellant was indicted in
the district court of Austin county for the theft of a
beef steer of the value of $14.  The case was continued
from term to term until the 10th day of June, 1876, when
it was transferred by the district court to the county court
of Austin county.  On the 9th day of August, 1876, the
defendant in the indictment was tried and convicted, and
his punishment assessed at confinement in the county jail
for one year; and he has taken an appeal to this court.

After the jury had returned their verdict the counsel for
the defendant filed a motion in arrest of judgment, 1st,
because, he says (in substance), the indictment does not
show at what term of the district court it was presented;
.2d, because the indictment is too vague and uncertain.

The 1st objection, if good at all, had it been presented
in time, certainly came too late after the defendant had
pleaded not guilty and the jury had returned their verdict.
The 2d objection was not well taken; the indictment
was a good one.  It contains all the material allegations in
an indictment for theft of a beef steer, and the defendant
could plead the conviction under it in bar of another prose-
cution for the same offense.

The indictment charges that the offense was committed
on the 1st day of December, 1872.  A Mrs. Ramm was the
principal witness on whom the state relied to convict the
defendant.  This witness testified that she saw the defend-
ant take the beef steer on the night of the 1st of December,
1872, and that no one else besides herself saw him take the
steer.

The defendant introduced two witnesses (King and
Fisher), who testified that they were well acquainted with
the general character of the witness (Mrs. Ramm) for truth

and veracity in the neighborhood in which she lives, and that it was bad, and that they would not believe her on oath. The state then introduced Dr. McLaren, who testified that he had been a practicing physician in Austin county for eighteen years, and for three or four years in the neighborhood where Mrs. Ramm resided; that Mrs. Ramm was living in the neighborhood when he came into it; that he had never heard her character for truth and veracity questioned; that he did not know her general character for truth; and he then stated, from his knowledge of her, generally, that he would believe her on oath. This last statement was allowed by the court to go to the jury, over the objections of the counsel for the defendant, who insisted that the witness had not qualified himself to testify as to the character of Mrs. Ramm for truth and veracity.

The state next introduced Ben Harris, who testified that he had known Mrs. Ramm since the war; that he had never heard her character for truth and veracity discussed, and that, from his knowledge of her, he would believe her on oath. The counsel for the defendant, at the proper time, also objected to this witness testifying as to the character of Mrs. Ramm, for the same reasons he did to the testimony of Dr. McLaren; which objections were overruled, and to which rulings of the court defendant's counsel excepted and took a bill of exceptions.

Mrs. Ramm was contradicted by some of the witnesses of the defendant in important portions of her testimony. We think the presiding judge committed an error in permitting the witnesses to state in their testimony that they would believe Mrs. Ramm on oath, when they had not stated that they knew her general reputation for truth and veracity; and for this error this case must be reversed.

After a witness has been examined in chief, his credit may be impeached in various modes besides that of exhibiting

the improbabilities of his story by a cross-examination : 1st, by disproving the facts stated by him ; 2d, by general evidence affecting his credit for veracity. But, in impeaching the credit of a witness, the examination must be confined to his general reputation, and not be permitted as to particular facts ; for every man is supposed to be capable of supporting the one, but it is not likely that he should be prepared to answer the other without notice, and unless his general character and behavior be in issue he has no notice. This point has been much discussed, but may now be considered as settled.

The regular mode of examining into general reputation is to inquire of the witness whether he knows the general reputation of the person in question among his neighbors. If he says he does, then he is asked to tell what that reputation is. In the English courts the course is further to inquire whether, from such knowledge, the witness would believe that person upon his oath. In the American courts the same course has been pursued, but its propriety has of late been questioned ; and perhaps the weight of authority, says Mr. Greenleaf, is now against permitting the witness to testify as to his own opinion. 1 Greenl. on Ev., sec. 461.

In determining as to whether or not the district court did right in transferring the case to the county court, we are called upon to determine as to whether the defendant was charged in the indictment with the commission of a felony. This question becomes the more important as it is insisted and held, in some districts of the state, that the act of the fifteenth legislature, published on page 242 of the General Laws, repeals all former laws making the theft of horses, cattle, hogs, sheep, and goats punishable with confinement in the penitentiary. We cannot subscribe to this position. We will give such of the Articles of our Criminal Code as

originally passed, and their subsequent change, if any, by the legislature, as we deem necessary to present the points at issue clearly before our readers.

The Code was adopted 26th of August, 1856.

Art. 756 of this Code : " Theft of property of the value of twenty dollars, or over, shall be punished by confinement in the penitentiary for a term not less than two nor more than ten years."

Art. 757. " Theft of property under the value of twenty dollars shall be punished by confinement in the penitentiary for a term of two years."

Art. 758. " The two preceding Articles do not apply to theft of property from a house or from the person, nor to cases of theft of any particular kind of property, when the punishment is specially prescribed."

Art. 765. " If any person shall steal any horse, gelding, mare, colt, ass, or mule, he shall be punished by confinement in the penitentiary not less than five nor more than fifteen years."

Art. 766. " If any person shall steal any neat cattle, sheep, goat, or hog, he shall be punished by confinem'emt in the penitentiary not less than two nor more than five years."

On the 12th of November, 1866, the legislature passed an act amending said Articles 757 and 766 of the Criminal Code.    The caption of this last act is as follows :

" An act to amend Articles 757 and 766 of an act to adopt and establish a penal code for the state of Texas.

" Article 757.  Theft of property under the value of twenty dollars shall be punished by imprisonment in the county jail for a term not exceeding one year, and by fine not exceeding one hundred dollars, or by such imprisonment without fine.    The provisions of this Article shall not apply to cases of theft where a different punishment for any specific offense is expressly provided by law.

"Article 766. If any person shall steal any cattle, sheep,

35

goat, or hog, he shall, if the value of the property stolen is twenty dollars or over, be punished by confinement in the penitentiary not less than two nor more than five years. If the value of the property stolen is under twenty dollars he shall be punished by imprisonment in the county jail for a term not exceeding two years, and by fine not exceeding one hundred dollars, or by such imprisonment without fine." 2 Pasc. Dig., Arts. 6547, 6548.

Again, in 1873 the legislature of the state of Texas passed an act amending Article 766. This last act is entitled " An act to amend Article 766 of the Penal Code," viz.:

" Section 1. Be it enacted by the legislature of the state of Texas, that Article 766 of the Penal Code be, and the same is hereby, amended so as to hereafter read as follows:

" Article 766. If any person shall steal any cattle he shall be punished by confinement in the penitentiary not less than two nor more than five years.

" Article 766, *a*. If any person shall steal any sheep, hog, or goat, he shall, if the value of the property stolen is twenty dollars or over, be punished by confinement in the penitentiary not less than two nor more than five years. If the value of the property is under twenty dollars he shall be punished by imprisonment in the penitentiary for not less than one nor more than two years.

" Sec. 2. This act to take effect and be in force from and after its passage.

"Approved May 17, 1873."

On the 21st of August, 1876, the legislature of this state passed an act to amend Article 757 of the Penal Code, which is as follows:

" An act to amend Article 757 of an act entitled ' An act to adopt and establish a penal code for the state of Texas,' approved August 26, 1856 ; November 12, 1866.

" Section 1. Be it enacted by the legislature of the state of Texas, that Article 757 of the above recited act shall here-

after read as follows, viz.·: 'Theft of property under the value of twenty dollars shall be punished by imprisonment in the county jail for a term not exceeding one year, during which time the prisoner may be put to hard work, and by fine not exceeding five hundred dollars, or by such imprisonment without fine.'

"Sec. 2. That all laws and parts of laws in conflict with the provisions of this act be, and the same are hereby, repealed.

"Approved August 21, 1876." (Took effect ninety days after adjournment of the legislature. See the General Laws of the Fifteenth Legislature, 242.)

The 2d section of this last act does not repeal Article 758 of the Code. The caption suggests no such purpose. Section 35, of Article 3, of the Constitution would not allow such construction. This section reads as follows:

"Sec. 35. No bill (except general appropriation bills, which may embrace the various subjects and accounts for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

If the 2d section of the act of 1876 should be held to repeal Article 758, the effect of it would be to quash all the indictments pending for theft of horses, as value is never alleged in them. We cannot believe that such effect was intended, and we do not believe that under the Constitution such a result could be accomplished under such a caption.

As we have before stated, the indictment in this case charges the defendant with the theft of a beef steer of the value of $14, committed on the 31st of December, 1872. The witness, Mrs. Ramm, testified that the defendant took the steer on that date. The act of 1866, which we have herein given, was in force on the 1st of December, 1872;

and at that time the theft of a steer under the value of $20 was a misdemeanor. The Code provides, in Article 14, that, "when the penalty for an offense is prescribed by one law and altered by a subsequent law, the penalty of such second law shall not be inflicted for a breach of the law committed before the second shall have taken effect. In every such case the offender shall be tried under the law in force when the offense was committed, and, if convicted, punished under that law; except that when, by the provisions of the second law, the punishment of the offense is ameliorated the defendant shall be punished under such last enactment, unless he elect to receive the penalty prescribed by the law in force when the offense was committed."

If the offense had been committed after the act of 1873 (which amended said Article 766) took effect, then the offense charged in the indictment would have been a felony. The county court had jurisdiction to try the case. These views are expressed at such length because we have not had time to condense them.

The judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*